# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| GLENN SIMINICK, | ) |  |
| --- | --- | --- |
|  | ) |  |
| Plaintiff, | ) | Civil Action No. 2:15-cv-00063 |
|  | ) |  |
| v. | ) | Judge Mark R. Hornak |
|  | ) |  |
| CITY OF HERMITAGE, et al, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION

**Mark R. Hornak, United States District Judge**

At the center of this case is a series of episodes involving the Plaintiff and his alleged desire to walk his dogs in and around Buhl Park and feed its wildlife. Buhl Park is a private reserve[1] located in the City of Hermitage, which is in Mercer County, Pennsylvania. The Plaintiff brings claims for violations of his rights under the First and Fourteenth Amendments, for an alleged conspiracy to violate those rights, along with a state law claim for assault and battery as to Defendant Roy Hamor.[2]

All Defendants[3] have moved for summary judgment. ECF Nos. 115, 119, 123. The matters have been fully briefed, and oral argument held. For the reasons which follow, the motions for

---

[1] Owned by the F.H. Buhl Farm Trust, and operated by the Buhl Park Corporation. ECF No. 116 at ¶ 14.

[2] The operative pleading is the Second Amended Complaint ("SAC"), ECF No. 77. The Plaintiff advised the Court at oral argument that he was dropping his state law claim for intentional infliction of emotional distress (Count V), and it is therefore dismissed. ECF Nos. 131 at 3, 133 at 12.

[3] The Defendants are the City of Hermitage itself, Hermitage Police Officers Justin Erickson, Camillo James DiLorenzo and James Rogerson, attorney Thomas Kuster (who is also Chair of the Park's Wildlife Committee and the Hermitage City Solicitor), Park officials Patrick O' Mahoney and Debbie Fait, and Roy Hamor. Count I is a claim for First Amendment Malicious Prosecution against the City of Hermitage, and Police Officers Erickson, Rogerson and DiLorenzo. Count II is an Equal Protection claim against Hermitage, Erickson, DiLorenzo, Rogerson, Fait, O'Mahony and Kuster. Count III is a First Amendment retaliation claim against O'Mahony, Erickson, DiLorenzo, Fait, Rogerson and Kuster. Count IV is a Conspiracy claim against all individual Defendants. As to the Police Officer

summary judgment as to all of the Plaintiff's claims based on federal law are granted.[4] The motion as to the remaining state law claim for assault and battery against Defendant Hamor is denied without prejudice. As to that remaining claim, the Court's jurisdiction is based only on the exercise of supplemental jurisdiction, 28 U.S.C. § 1367(c)(3). Because that would be the only claim left in this case, and against only one Defendant (Hamor), that claim will be dismissed without prejudice for lack of subject matter jurisdiction, and the Plaintiff is free to pursue that claim in state court should he seek to do so, and to the extent permitted by state law.

The central events in this case unfolded from May, 2013 to October, 2014. On May 1, 2013, it appears that the Plaintiff got into a wrestling match with Defendant Hamor[5] when Hamor allegedly saw that Plaintiff was feeding wildlife in the Park contrary to Park directives to the Plaintiff that he not do so. Plaintiff and Hamor each say that that grappling was the fault of the other. Based on what he saw when he was called to the scene, and what a third-party witness told him, the responding Hermitage Police Officer, Defendant Erickson, cited[6] both of those actors for harassment and disorderly conduct under state law. ECF No. 125-1 at 5. It appears that Plaintiff

---

Defendants, Counts I and III are functionally identical with one another. Count VI is an assault and battery claim against Hamor.

[4] The grant of summary judgment is based on the Court's conclusion that resolving any material evidentiary disputes in favor of the Plaintiff (and giving him the benefit of *reasonable* inferences), as to the matters at issue, there are no genuine disputes of material fact and, that as to such matters the respective Defendants are entitled to judgment in their favor as a matter of law. Fed. R. Civ. P. 56. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F. 3d 638, 643 (3d Cir. 2015). Of note here, the Court has also applied the principle that when the moving party has suggested that the non-moving party (Plaintiff) cannot demonstrate one or more essential elements of the non-moving party's case, as to which the non-moving party bears the burden of persuasion, the non-moving party is obligated to make a showing of the record evidence that would allow that burden to be met. *Id.* Where there is no record evidence that would meet that burden as to such an element, summary judgment is appropriate. Here, the parties have advanced voluminous facts, *see* ECF Nos. 116, 120, 125, 128, 130, 132, 135, and 139, but in the Court's assessment, as to the *material* facts, there are not genuine disputes as they relate to the elements of the claims advanced.

[5] Who apparently has no affiliation with either the Park or the City. ECF No. 120 at ¶ 9, ECF No. 132 at ¶ 9.

[6] In the Second Amended Complaint, Plaintiff alleges that he was unlawfully arrested. ECF No. 77 at ¶¶ 41, 50A, 57, 75A. There is no record evidence advanced by Plaintiff that he was ever arrested by any of the Police Officer Defendants, or anyone else.

2

was convicted at the local magistrate of harassment in November, 2013, but the charges were later withdrawn when an appeal was taken to the Court of Common Pleas of Mercer County, Pennsylvania. ECF No. 125-1 at 14.

On May 15, 2013, the Park sent the Plaintiff a certified letter advising him that he was barred from the Park due to his feeding of wildlife in the Park. That letter was returned from the postal service unclaimed, but the Park's Ranger, William Watson, asserts that he personally told the Plaintiff of his being barred on June 15, 2013[7]. The Police Department had been provided with a copy of the May 15, 2013 letter on or about May 16, 2013.

On June 16, 2013, the Plaintiff was in the Park. As instructed by his Park superiors, Watson called the Hermitage Police via the County 9-1-1 Dispatch Center,[8] Officer Erickson was dispatched by County 9-1-1, arrived, and cited the Plaintiff for trespass, but only after interviewing Watson and being told by Watson that he (Watson) had personally told the Plaintiff to stay out of the Park, and that the Plaintiff was then actually in the Park. At a local magistrate's hearing months later (in November, 2013), the Plaintiff was acquitted of that charge.

On September 25, 2013, the Plaintiff was again seen in the Park by Park officials. As they had been instructed to do by their Park superiors, they called the police. Defendant Officer

---

[7] The Plaintiff alleges that he was not aware of the ban until a local magistrate's hearing in January of 2016. Putting aside for the moment the questionable logic as to how the Plaintiff could persist in asserting that he was unaware of the ban in the face of being met with the assertion of the ban at the time of each of the multitude of such citations based on the ban, all occurring well before January of 2016, see ECF Nos. 120 at ¶ 70, 138 at 5, and at the hearing of November 21, 2013 where such notice was an issue, ECF No. 130 at ¶ 104, what is critical here is that the Plaintiff does not call into question that the Police Officers involved all believed that such a ban had been implemented and communicated to the Plaintiff (based on the Park's letter received by the Police Department and the call to the Department from the Park's Ranger), and he does not have a record basis to support a conclusion that the Police Officers should not have concluded that he had been so banned from the Park and so notified. See ECF No. 133 at 5.

[8] At oral argument, the parties advised the Court that all calls for Police assistance were via that dispatch center.

3

DiLorenzo was dispatched to the scene, and cited the Plaintiff for trespassing. In November, 2013, the Plaintiff was acquitted of those charges at the local magistrate.[9]

On September 17, 2014, the Plaintiff was cited for summary trespassing in the Park, and then again on October 6, 2014, each time by Defendant Rogerson. Those charges were withdrawn, but reinstituted as misdemeanor defiant trespass charges. In January, 2016, Plaintiff was convicted of the September, 2014 trespass charge, which conviction was then affirmed by the Pennsylvania Superior Court on appeal. ECF No. 116 at ¶ 37.

It is against this backdrop that this lawsuit unfolds. We'll consider the claims and the summary judgment motions as to the Defendants *seriatim*.

Defendants Fait and O'Mahony were at all relevant times management officials of the Park, and the Park only. ECF No. 116 at ¶¶ 18-19. They hold no governmental or political office in Hermitage, or seemingly anywhere else. The Plaintiff claims that they deprived him of Equal Protection of the law under the Fourteenth Amendment (Count II), retaliated against him for the exercise of his rights under the First Amendment (Count III) and also conspired with Hermitage officials to deprive him of those same federal rights (Count IV). The federal claims against these Defendants at Counts II and III facially fail because the record demonstrates that these Defendants simply are not state officials, which is ordinarily a fundamental predicate for asserting First and Fourteenth Amendment claims via 42 U.S.C. § 1983. *See Max v. Republican Comm. of Lancaster Cty.*, 587 F.3d 198, 200 (3d Cir. 2009); *Hessami v. Corp. of Ranson*, 170 F. Supp. 2d 626 (N.D.W. Va. 2001). (First Amendment does not apply to private actors). The Plaintiff advances no record basis to conclude that the Park itself is a state entity, or should be treated as one in these

---

[9] Officers Erickson and DiLorenzo say that they heard the Magistrate tell Plaintiff to "stay out of Buhl Park." ECF No. 120 at ¶ 52. Plaintiff says that the Magistrate did not so instruct him, ECF No. 132 at ¶ 52, but has no knowledge of what the Officers heard.

4

circumstances, so their status with the Park does not clothe these Defendants with the mantle of "state actor" status[10].

The basis upon which the Plaintiff does seek to snag them with a "federal hook" comes at Count IV (and in parallel allegations at Counts II and III) that these Defendants supposedly conspired with Hermitage officials to work with those local governmental officials in depriving the Plaintiff of those federal rights. *Goodson v. Maggi*, 797 F. Supp. 2d 624, 638 (W.D. Pa. 2011). But what the record shows is that what that these *Park* Defendants did was call the police when the Plaintiff was in the Park contrary to the orders of the *Park* officials. ECF No. 116 at ¶ 30.

Calling the police, rather than engaging in self-help, to report a violation of the law simply is not "state action", nor does it make the person calling the police a "state actor." *Dickerson v. DeSimone, Inc.*, 2011 WL 3273228 at *2-3 (E.D. Pa. Aug. 1, 2011). As to the claimed conspiracy, the only thing that the record shows is that when Park officials met with Hermitage officials (at the Park offices, and at the request of Fait) in early September, 2014 to discuss with them how the Park should address the Plaintiff's repeated re-entry to the Park against the Park's wishes, the local government officials in attendance (the Hermitage City Manager and its Chief of Police, neither of whom is a Defendant here) advised the Park officials that the Park officials should not engage in self-help, but should call the Police for assistance. ECF Nos. 130 at ¶ 108, 133 at 8-10. Thus, the core of the Plaintiff's "conspiracy" allegation is that the Park officials called the local Police when they concluded that the Plaintiff was trespassing in the Park, that the local officials had advised the Park officials that the Park officials should call the police if they believed that the

---

[10] The reality is that the Plaintiff doesn't even try to make that case. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Blum v. Yaretsky*, 457 U.S. 991 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830 (1992), and their progeny. And he concedes that he was allegedly retaliated against for what he said at a meeting of the *Park* Wildlife Committee, not a public agency, and that he was banned from the Park by the *Park* for his criticism of how the *Park* conducted its business. ECF No. 131 at 1, 4.

5

Plaintiff was so trespassing, and then when dispatched by the County 9-1-1 dispatch center,[11] the Police arrived, investigated,[12] and cited the Plaintiff. ECF No. 131 at 8.

That rather unremarkable effort to engage law enforcement by citizens who believe that the law needed to be enforced is not evidence of the requisite conspirational "meeting of minds," *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008), aimed at the goal of depriving the Plaintiff of Constitutional rights, such as could cause these Park Defendants to be treated as "state actors." The Plaintiff's argument in support of his conspiracy claim is premised on his contention that by virtue of the Park officials meeting with the Hermitage Police officials in order to discuss the Plaintiff's being barred from the Park, by the Park and the Police officials advising them that if they believed that occurred that they should call the police, there is sufficient record evidence of a "meeting of the minds" that they would work hand-in-hand for the purpose of depriving the Plaintiff of constitutional rights. But to make that leap would require rank speculation (especially as to any evidentiary link between the asserted conspiracy and the Police Officer Defendants) that is unsupported by record evidence of any such agreement[13]. *Kamanovitz v. G. Heileman Brewing*

---

[11] There is no record basis to conclude that Mercer County 9-1-1 was part of any such alleged conspiracy, or that the Hermitage Police Officer Defendants (Erickson, Rogerson, and DiLorenzo) were dispatched to respond to the Park's call for assistance other than in the normal course of County dispatch operations. Simply stated, it appears that they each happened to be the Police Officer in each situation that was dispatched by the non-party County dispatch center in response to the request for Police assistance called into that County dispatch center. There is also no record evidence advanced that the County dispatch center or any of the individual Police Officer Defendants was in on, or even aware, of the alleged conspiracy.

[12] The record does not support an inference that the Police Officers agreed to abdicate their judgment to Park officials, or of a pre-arranged plan actually involving the Police Officers to cite the Plaintiff without probable cause. *See Cruz v. Donnelly*, 727 F.2d 79, 80 (3d Cir. 1984).

[13] Of particular note, it is alleged that this meeting occurred in September, 2014, which as a matter of logic (and the calendar), would mean that any "conspiracy" hatched at that meeting could have had nothing to do with the Plaintiff being barred from the Park the years before, or with the multiple citations issued by the Police Officers in 2013. Further, the Plaintiff's Summary Judgment response brief, ECF No. 131, is threadbare as to any facts showing conspirational participation by O'Mahony. He was not at the September, 2014 meeting, and all the Plaintiff alleges is that O'Mahony banned Plaintiff from the Park, and then (without offering any record facts), joined with the Police Officers in a conspiracy. *Id.* at 4.

*Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd*, 769 F. 2d 152 (3d Cir. 1985). Summary judgment is therefore granted in favor of Defendants Fait and O'Mahony, and against the Plaintiff, on all claims[14].

That leaves the federal claims against the City of Hermitage, the Hermitage Police Officer Defendants, and the claims against Kuster and Hamor. For somewhat different reasons, they also all fail, with the exception of the state law assault and battery claim against Hamor (Count VI), a participant in the May, 2013 physical dust-up with the Plaintiff.

These federal claims fail as to the local Police Officers because they had probable cause[15] to conclude that the Plaintiff was committing a trespass when he was in the Park contrary to what they reasonably understood to be directions he had been given by the Park to stay out of the Park. If there was probable cause for those citations to issue, then the Plaintiff's First and Fourteenth Amendment retaliation and conspiracy claims fail as a matter of law as against all of them, and Plaintiff concedes as much. ECF No. 133 at 3. *Hartman v. Moore*, 547 U.S. 250, 263 (2006); *see Posey v. Swissvale Borough*, 2013 WL 989953, at *8 (W.D. Pa. March 13, 2013).

As to the September, 2014 trespass charge, the record is undisputed that the Plaintiff was convicted of that offense, and that conviction was affirmed on appeal to the Pennsylvania Superior

---

[14] For the same reasons, this reasoning also applies to the Plaintiff's Equal Protection claim as to O'Mahony and Fait. There is no effort made by Plaintiff to convert the Park to a state agency, and only an inadequately thin reed of speculation aimed at making them state actors, each a critical element of an Equal Protection claim.

[15] As the Plaintiff acknowledges, "probable cause" exists when a police officer reasonably believes that the elements of the charged offense have been met. ECF No. 133 at 4. Probable cause exists if there is a "fair probability that the person committed the crime at issue", and the facts are such that the involved law enforcement officer(s) has facts and circumstances before them that would cause a reasonable person to believe that an offense has been or is being committed by the person to be charged with that offense. A police officer may be liable for civil damages only if no reasonably competent officer would conclude that probable cause exists. *See Wilson v. Russo*, 212 F. 3d 781, 789-90 (3d Cir. 2000). Among other things, this means that the evidentiary standard for probable cause is significantly lower than the standard applicable to obtain and sustain a conviction. *Wright v. City of Phila.*, 409 F. 3d 595, 602 (3d Cir. 2005). And absent substantial evidence of the unreliability of a reporting witness, a police officer is permitted to rely on what the officer is told by the witness. *Wilson*, 212 F. 3d at 790.

7

Court. ECF No. 116 at 37. That means that the Plaintiff was guilty of the charge at issue beyond a reasonable doubt, which is way above and beyond the lower probable cause standard. Thus, that citation cannot be the predicate for the federal claims alleged here[16].

As to the May, 2013 citation arising out of the physical event with Hamor, the record facts demonstrate that the responding Police Officer (Erickson) was sent to the scene by the County dispatch center, and upon arrival saw physical evidence that the protagonists had been rolling around on the ground with each other. Each admitted to the Officer that they had a physical altercation with one another, the Plaintiff conceded that there was a heated verbal confrontation between them, and each pointed the finger at the other as the instigator. A disinterested, third party witness described the tussle to the Officer, and what she reported lined up with what the Officer saw, and what the contestants had told him. The Police Officer was not obligated to definitively sort out who the instigator was on the spot. What he saw, what was reliably reported to him, and what commonsense inferences told him, was that these two grown men had been in a fight with one another, then and there. There was certainly probable cause for the Officer to reasonably conclude that that state law (disorderly conduct and harassment)[17] had been broken, and these two adults were the lawbreakers. Thus, probable cause existed as a matter of law for the Officer to cite the protagonists.

---

[16] That conviction of a 2014 trespass also calls into question the Plaintiff's position that he was not aware of being banned from the Park until January, 2016, since an element of the offense is the actor knowing that he was not permitted to be where he was observed to be.

[17] The Pennsylvania crime of harassment involves a person who "with intent to harass, annoy or alarm another, . . . strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same, 18 Pa. Cons. Stat. 2709(a)(1). Disorderly conduct occurs when the actor "with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, engages in fighting or threatening, or in violent or tumultuous behavior." 18 Pa. Cons. Stat. 5503(a)(1). Defiant trespass, which comes up below, occurs when an actor, "knowing he is not licensed or privileged to do so, enters or remains in any place as to which notice against trespass is given in actual communication to the actor." 18 Pa. Cons. Stat. 3503(b)(1)(i).

As to the events of June 16, 2013, when he arrived after being dispatched by Mercer County 9-1-1, Officer Erickson was met by Park Ranger Watson, who personally told the Officer that he, Watson, had personally seen the Plaintiff in the Park. The Officer also had learned from his daily review of Police call logs when his shift had started that the Police Department had been advised that Watson had personally told the Plaintiff on June 15, 2013 that the Plaintiff was barred from the Park, and that Watson had so advised the Hermitage Police Department on that date. Then, a car with the Plaintiff riding in the passenger seat pulled up to the police cruiser, *in the Park*. The Officer then and there knew that the Police Department had been advised that the owner of the Park had told the Plaintiff to stay out of the Park, and that the Plaintiff was then in the Park. Thus, the Officer had a reasonable basis to conclude that the state trespass law was being broken, and the Plaintiff was breaking it. Probable cause, once again.

On September 25, 2013, the Police were dispatched to the Park, as Ranger Watson had reported that the Plaintiff was back in the Park walking his dog. Watson told the arriving Officer (DiLorenzo) that he (Watson) had told the Plaintiff that the parking lot in which Plaintiff was walking his dog was part of the Park, the Plaintiff was in the Park when the Plaintiff was not to be in the Park, and that the Plaintiff did not change course. Watson relayed all of this to the responding Officer. The Plaintiff offers up no reason as to why the Officer should not have believed what Watson told him,[18] and once again, what Watson told the Officer was factually sufficient to make it reasonably probable that the state trespass law was again being broken, and the Plaintiff was breaking it. Probable cause, once more.

That brings us to the October, 2014 trespass citation. The Police were dispatched to the Park when Fait reported that the Plaintiff was back in the Park. The responding Officer (Rogerson)

---

[18] Particularly since it was fully consistent with what the Police Department had previously been advised by the Park.

9

was aware from what he had been told by Police Department colleagues that the Plaintiff was barred from the Park and that the Plaintiff knew this. ECF No. 130 at ¶ 114. On his way to the Park, the Officer encountered the Plaintiff, who told the Officer that he, the Plaintiff, had not been in the Park, but instead had only been walking in a utility right-of-way on the Park's border. Rogerson stated that the Plaintiff acknowledged to him (Rogerson) that he had been told that he could not be in the Park (which the Plaintiff denies). The Officer interviewed Fait. She told the Officer what she had witnessed, namely that she personally saw the Plaintiff walking in the Park, and that where she saw the Plaintiff walking was indeed within the Park boundaries. Based on the report of an eyewitness (who Rogerson could reasonably conclude was aware of the Park's contours) that the Plaintiff was in fact in the Park contrary to the Park's directive that he not be present there, *see* ECF No. 132 at 9, n.3; ECF No. 138 at 5, n.4, the Officer cited the Plaintiff for trespass. The Plaintiff offers up no record basis from which the responding Officer should have then concluded that Fait was unreliable, *Wilson v. Russo*, 212 F.3d 781, 789-90 (3d Cir. 2000), and based on what Fait told the Officer, the Officer had a sufficient basis to conclude that the state trespass law was being broken, and the Plaintiff was breaking it. Probable cause once again.

What this all means is that the federal claims against the responding Officers—Erickson, DiLorenzo and Rogerson—all fail, as in each case, the responding Officer had probable cause as a matter of law to cite the Plaintiff for the state law violations as they did.[19] Police officers are permitted to rely on what they personally know or have been reliably advised. They all reasonably

---

[19] The federal claims against the Police Officers fail for another reason. Central to the claims asserted at Counts I, II, II and IV is the assertion that all of the citations issued to the Plaintiff were in retaliation for Plaintiff's speaking out at a *Park* meeting about how *Park* officials conduct *Park* business. Yet the record, even the record advanced by Plaintiff, ECF No. 132, is silent as to any record evidence that any of the Police Officers was even aware of Plaintiff's speech about Park matters, the allegedly protected conduct they were supposedly individually retaliating against. Along the same lines, contrary to the assertions of the Second Amended Complaint, ECF No. 77 at ¶ 53, there is no evidence proffered that any Police Officer Defendant had anything to do with the Park's decision to bar the Plaintiff from the Park, or was aware of any alleged threat or plan or agreement to cause the Plaintiff to be cited by the Police.

10

believed that the Park had barred the Plaintiff from the Park as they had become aware of that from the notices provided by the Park to the Hermitage Police Department, and the Plaintiff has advanced no record basis to challenge that the Police Department had been so advised. They each relied on what they saw as to where the Plaintiff was situated, and/or what they say he told them as to where he was, and/or what facially knowledgeable Park officials told them that they had personally observed. There is no record evidence advanced which should have made a reasonable Officer doubt what was factually reported to them, and as noted above, as to each citation, each Officer reasonably concluded that there was probable cause to believe that the Plaintiff was breaking the state law they cited him for violating[20]. Thus, Plaintiff's First Amendment and First Amendment retaliation/malicious prosecution claims all fail because of the presence of probable cause as a matter of law[21].

As to Defendant Kuster, there is no admissible evidence advanced by the Plaintiff that could support a conclusion that Kuster, in any governmental capacity, had (or even could have)

---

[20] None of the involved Officers was obliged to sort out ultimate issues of guilt or innocence in the field. *Patterson v. School Dist. Of Phila.*, 2000 WL 1020332, at * 6 (E.D. Pa. July 19, 2000). While the Plaintiff asserts that he had not then been informed of his ban from the Park, or that the Officers didn't investigate enough, the Police Officers had reliable information directly to the contrary to the Plaintiff's denials in the form of the notices of the ban provided to the Police Department. They also had facially reliable information that the Plaintiff was on Park property contrary to those directives. Thus, they had probable cause to conclude that the Plaintiff was in violation of the Park's ban of him from Park property, and that as a result, the Plaintiff was violating state trespass law.

[21] To the extent that the Plaintiff asserts a Fourteenth Amendment "class of one" Equal Protection claim against the Police Officer Defendants, or the City of Hermitage, or O'Mahony and Kuster, any such claim also fails, for a couple of reasons. First, the record demonstrates that it was a private actor, the Park, and not a local government actor, that barred the Plaintiff from the Park. *See* ECF No. 133 at 14 (noting that it was the Park that barred the Plaintiff from entry, and asserting that *Park* officials treated him in an "excessive and unnecessary" manner). Second, there is no record evidence advanced by the Plaintiff that the Mercer County dispatch center treated the calls from the Park for Police assistance any differently than it did any other calls for assistance, that it dispatched the Hermitage Police in any different fashion, that it somehow specifically chose these Officers to dispatch, or, importantly, that the involved Police Officers conducted their duties relative to the Plaintiff any differently than they did in regard to anyone else in analogous circumstances. *See Bag of Holdings, LLC v. City of Philadelphia*, 682 F. App'x 94, 98 (3d Cir. 2017) ("class of one" theory requires arbitrary classification by the government). There is simply no record evidence from which it could be plausibly concluded that the Plaintiff was treated in an unconstitutionally-differential manner than any other similarly-situated person by any governmental official.

11

ordered the citation of the Plaintiff by the Hermitage Police, there is no record evidence that as City Solicitor Kuster did or could cause such to occur, or that as Solicitor, he was a final policymaker as to the City of Hermitage or its Police department. *See Anderson v. Perhacs*, 2013 WL 1336124, at *4-6, 7 (W.D. Pa. Mar. 29, 2013) (private attorney solicitor not state actor or final policymaker by virtue of status as solicitor). But beyond that, since there was probable cause supporting the Plaintiff's citation in each event, the claim of a deprivation of federal rights, or of a conspiracy to deprive the Plaintiff of those rights, necessarily fails as a matter of law because the existence of probable cause vitiated any substantive or conspiracy claim in such regards[22].

Finally, given that there is no underlying constitutional tort by the individual Defendants, there can be no derivative federal claim against the City of Hermitage (*Monell* notwithstanding[23]),

---

[22] This on the surface would appear to be a bit closer of a call as to Kuster given his multiple "hats," but scratching below the surface shows that it really is not. Kuster serves as the chair of the Park's Wildlife Committee, is its lawyer, and he is also the solicitor for the City of Hermitage. According the Plaintiff, one of the Park Rangers, Ranger Mehalko, supposedly told Plaintiff that he (Mehalko) heard Kuster say in conjunction with the September, 2014 meeting with Park officials that the Plaintiff would be arrested three times. The parties hotly contest whether Kuster made any such statement, along with the admissibility of that out-of-court statement by Mehalko about the alleged out-of-court statement by Kuster. If the only issue was whether Kuster uttered the words, then there is no hearsay issue, no matter how many layers are involved, since the statement by Mehalko about the statement by Kuster would not be sought to be admitted for the truth of the matter asserted. But it would appear to the Court that that is exactly why the Plaintiff wants them admitted. Now, to the extent that Kuster is a "party," then his statement would not be hearsay at all, Fed. R. Evid. 801, but that does not get Mehalko's out-of-court statement to Plaintiff into the record, and the Plaintiff advances no hearsay exception that would do the trick.

But even putting all of that aside, and accepting Plaintiff's statement as to Mehalko's alleged statement as to Kuster's alleged statement, there is no record evidence that could support any causal link between any such statement by Kuster and the deprivation of any of the Plaintiff's constitutional rights beyond the Plaintiff's speculation that that must be the case. First, the statement was allegedly made at a meeting convened by Fait, not Kuster, occurring a year *after* the Plaintiff's ban from the Park, and long after many of the citations issued to him. *See* ECF No. 132 at para. 83-87. The law is powerful, but it cannot turn back the hands of time. Second, there is no record evidence that any such statement by Kuster had anything to do with the Mercer County dispatch center taking the calls for assistance from the Park officials, or in dispatching the involved Police Officers, or (critically) in the Police Officers issuing the involved citations, and no record evidence that any of those Officers were at all aware of any such statement by Kuster.

[23] *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978) of course bars the assessment of constitutional liability in a case such as this against the municipal government on *respondeat superior* grounds. The Second Amended Complaint alleges that the City of Hermitage failed to adequately supervise, train and/or control the involved police officers, but absent some record evidence related to the adoption of such policies by a final decision maker, such a claim is reduced to one that is barred by the *Monell* doctrine. Here, the Plaintiff advances no such record evidence, beyond the fact of the meeting between the Park officials and certain non-Defendant Hermitage officials in which the Hermitage officials advised the Park officials to call the police if they believed that the Plaintiff was trespassing in the Park. As noted above, the record advanced by the Plaintiff offers no sufficient evidentiary basis to

*Estate of Thomas v. Fayette County*, 194 F.Supp. 3d 358, 378-80 (W.D. Pa. 2016); *see Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124(3d Cir. 2003). Further, the Plaintiff has advanced no record basis that would permit a conclusion that any final policymaker of the City of Hermitage had adopted and promulgated any policy that caused the deprivation of the Plaintiff's constitutional rights, and any such claim would fail on those grounds, also. Summary judgment in favor of the City of Hermitage is therefore proper.

That leaves the claims against Hamor. For the reasons noted above, there is no sufficient record evidence that Hamor had become a state actor relative to these matters, or had conspired with anyone to deprive the Plaintiff of any federal rights,[24] and as also noted above, as a matter of law, there were no such deprivations. But there is a genuine issue of fact as to the assault and battery claim the Plaintiff brings for the wrestling match. Hamor says that his involvement was solely a matter of self-defense against the Plaintiff's aggression. Maybe, maybe not. That is an issue that would have to be sorted out by a jury, and since all of the federal claims in this case will be dismissed, it is improvident for this Court to continue to exercise subject matter jurisdiction over that purely state law claim, *Estate of Thomas*, 194 F. Supp. 3d at 385, and it will be dismissed without prejudice.

---

support a conspiracy to violate the Plaintiff's constitutional rights, and it certainly advances no basis to conclude that the Park officials being told that they can and should call the police if they thought the law was being broken is the establishment of an unconstitutional policy by Hermitage officials. Further, when there is no underlying constitutional violation by the involved police officers, there can be no viable "failure to train or supervise" claim against the municipal government. *Willard v. Pennsylvania Soc. For the Prevention of Cruelty to Animals*, 2012 WL 1392657, at *6, n.10 (E.D. Pa. Apr. 23, 2012), *aff'd*, 525 F. App'x 217 (3d Cir. 2013).

[24] The best that Plaintiff can muster is a statement allegedly made by Hamor at the time of the May 1, 2013 altercation that he, Hamor, was going to "throw [Plaintiff] out" of the Park, ECF No. 129 at 4, and Plaintiff's statement that when Hamor supposedly also said that "we're not done with you," the "we're" referred to Kuster, but supposedly based on testimony at a prior hearing involving Plaintiff. ECF No. 134-12. Plaintiff also alleges that Hamor was romantically involved with a paralegal in Kuster's law office. None of this provides any causal link to the Police Officer Defendants, or the basis for, or content of, their decisions to cite the Plaintiff for trespassing, or Erickson's citation of both Hamor and the Plaintiff for their physical altercation, a decision buttressed by the report of a disinterested third-party witness. There is also no record evidence advanced that would make Hamor part of the Plaintiff's conspiracy allegations centered on the September, 2014 meeting convened by Park officials.

For the above reasons, summary judgment is granted as to all claims in favor of all Defendants (except as to the assault and battery claim against Hamor) and against the Plaintiff. The assault and battery claim against Hamor is dismissed without prejudice for want of federal jurisdiction.

An appropriate Order will be issued.

                                                      Mark R. Hornak
                                                      United States District Judge

Dated: March 27, 2018

cc:    All counsel of record